776 So.2d 1001 (2001)
Frank J. WEBER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-1811.
District Court of Appeal of Florida, Fifth District.
January 19, 2001.
*1002 James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
COBB, J.
The principal issue presented by this case is whether the appellant, Weber, was properly charged and convicted of burglary of a dwelling.[1] Weber stole a ceiling fan lying on a cement slab abutting the rear of the victim's first floor apartment. The slab was not enclosed by walls but had a cover over it supported by posts, said cover being the balcony of the apartment immediately over that of the victim. Sliding glass doors opened onto this slab affording a rear exit for the victim's apartment.
On appeal Weber contends that only a structure "separately secured" can be burglarized, whereas a structure open to the public cannot; hence, he can only be guilty of theft. In support of this contention Weber relies upon Miller v. State, 733 So.2d 955 (Fla.1998) and upon the following language from the recent Florida Supreme Court opinion in Delgado v. State, 776 So.2d 233 (Fla.2000):

A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with the purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. It is an affirmative defense to prosecution for burglary that the building or structure was abandoned. (Citation omitted) The commentary explains that this definition attempted to limit the reach of the crime: The offense has thus been limited in the Model Code to the invasion of premises under circumstances especially likely to terrorize occupants. Most of the extensions of the offense that have been added by legislation over the years have been discarded. (Emphasis added)
In response the state points out that Weber's argument on appeal is not the one made to the trial court, hence it has not been preserved for review. The state cites to various cases in support of this proposition. See, e.g., Occhicone v. State, 570 So.2d 902 (Fla.1990); Tillman v. State, 471 So.2d 32 (Fla.1985); and Pope v. State, 646 So.2d 827 (Fla. 5th DCA 1994). This appears to be true. The argument Weber advanced to the trial court was that the cement slab, from which the fan was stolen, did not constitute an "attached porch" as contemplated by the definition of a dwelling set forth in section 810.011(2), Florida Statutes (1999). That provision reads:
(2) "Dwelling" means a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, *1003 mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof. However, during the time of a state of emergency declared by executive order or proclamation of the Governor under chapter 252 and within the area covered by such executive order or proclamation and for purposes of ss. 810.02 and 810.08 only, the term includes such portions of remnants thereof as exist at the original site, regardless of absence of a wall or roof.
Even though not raised for appellate review, the argument presented at trial concerning the meaning of the term "attached porch," as used in the above statute, raises the real question in this case.[2] Was the cement slab an "attached porch?" The statute fails to define the term.
In argument before the trial court defense counsel conceded that a common dictionary definition of a porch is: "a covered entrance to a building usually projecting from the wall and having a separate roof." As pointed out to counsel by the trial judge, that dictionary definition comports "almost exactly" with the testimony of the owner of the fan when describing his premises. The following colloquy occurred at trial between the prosecutor and the owner, a man named Goodwin:
[Prosecutor:] Where had you left it [the fan] when you went across the street, across the way to visit your friend?
[Goodwin:] It was on my back porch.
[Prosecutor:] On your back porch?
[Goodwin:] Yes, sir.
[Prosecutor:] Now, describe the back porch area to me?
[Goodwin:] We have a sliding glass door to go to the porch. It's like a cement slab where you put your barbecue and maybe a bicycle or your items, whatever you have.
It has beams supporting the upstairs porch and the other portions are on top of it. I'm on the bottom floor.
[Prosecutor:] So above it, it has a roof or a ceiling?
[Goodwin:] Yes.
[Prosecutor:] And posts holding the ceiling up?
[Goodwin:] Yes.
[Prosecutor:] The apartment above yours, do they also have a back porch?
[Goodwin:] Yes.
[Prosecutor:] Theirs would be like a balcony?
[Goodwin:] Yes.
[Prosecutor:] And it would be on top of yours?
[Goodwin:] Correct.
[Prosecutor:] Besides the ceiling fan, what else was there on your back porch, if you remember?
[Goodwin:] A barbecue, a punching bag, and a bicycle.
[Prosecutor:] How big is this back porch?
[Goodwin:] Probably about as big as this section, from where the judge is sitting to where this ends (indicating).
[Prosecutor:] About six or seven feet?
[Goodwin:] Yeah, about that.
We agree with the trial judge that, based upon the foregoing testimony, the fan was taken from an "attached porch" as that term is used in section 810.011(2). Even had the more relevant argument been presented on appeal, as it was below, we would affirm the burglary conviction. Moreover, the appellant's brief assumes *1004 that the slab was a porch; the argument presented here is simply that the porch was not completely enclosed. We are not persuaded by either argument in view of the wording of section 810.11(2), which does not require that an attached porch be enclosed to make it part of a dwelling and thus susceptible to burglary.
The Miller and Delgado opinions are of no avail to the appellant. The former deals with business premises and therefore did not involve the definition of a dwelling. Delgado concerned whether or not a person's license or invitation to enter or remain on another's premises is automatically revoked by the commission of a criminal act while there so as to subject the offender to a burglary charge. Neither case involved surreptitious theft from the attached porch of a dwelling and neither provides support for Weber's argument in the instant appeal.
We find no merit in the appellant's remaining issue regarding denial of his motion for mistrial.
AFFIRMED.
SAWAYA and ORFINGER, R.B., JJ., concur.
NOTES
[1] Section 810.02(1), Florida Statutes (1999), defines "burglary" as entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
[2] In fairness to appellate counsel, it should be noted that his argument emphasizing the absence of a porch enclosure probably was prompted by our recent opinion in Blanchard v. State, 767 So.2d 573 (Fla. 5th DCA 2000). There we set forth the state's dual arguments: (1) the evidence relating to the nature of the porch enclosure in that case, and (2) the statutory definition of a dwelling expressly including "any attached porch" in section 810.011(2), Florida Statutes (1999). In affirming, we failed to specify the basis for our action.